By the Court, McCunn, J.
This is an action to recover damages against the defendants as common carriers. The complaint alleges that by reason of the neglect or refusal on the part of defendants to deliver a box of maps to Dunn & Ritchie, Shreveport, Louisiana, he, the plaintiff, has sustained damages. The defendants answer, that they agreed to take the goods to New Orleans, and no further, and that they performed their contract accordingly. ■
The case is rendered somewhat difficult from the unskillful manner in which the referee proceeded, and from his confused and mixed form of findings of law and of fact. The vital questions, however, in the case, and those upon which the controversy must turn in the end, are as follows : • Was there a contract on the part of the defendants with the plaintiff to carry the goods to Shreveport, and if there was not, was it the general custom on the part of defendants to receive goods thus marked under such circumstances, and forward the same to their places of destination ?
As to the question of contract between the parties, it appears in evidence that on the 2d March the defendants’ agents told Naughton, the plaintiff’s clerk, that they carried goods to Shreveport; that they then' computed the freight for him, and in that computation the clerk included the entire distance from *62 Hew York to Shreveport; that next Friday he and the cartman brought the goods : that the defendants received the same and gave the following receipt:
“ Adams Express Company. Great Eastern, Western, and Northern Express Forwarders. New York, March 4th, 1859. Eeceived of John G. Wells, Esq. one box maps, marked S. D. Wood, care of Messrs. Dunn & Bitchie, Shreveport, Louisiana, C. O. D. $292. To be forwarded to-- only. It is further agreed, and is part of the consideration of this contract, that the Adams Express Company are not to be responsible, except as forwarders, for any loss or damage arising from the dangers of railroad, steam or river navigation, leakage, fire, or from any cause whatever, unless the same be proved to have occurred from the fraud or gross negligence of ourselves, our agents, or servants, and we in no event to be liable beyond our route as herein receipted; valued under fifty dollars, unless otherwise. herein stated. All articles of glass will be taken at shipper’s risk only, the company refusing to be responsible for any injury by breakage or otherwise. Freight-. For the company. Westcott.”
And in that receipt they did not limit their liability by inserting in the usual blank printed in the receipt, left for that purpose, the words “ Hew Orleans.”
Another portion of the evidence is, that they had frequently sent packages of a similar kind, and that a similar receipt had been taken, and that Adams & Co. had been in the habit of receiving and forwarding similar goods to Shreveport, and charging freight throughout, all of which testimony is uncontradicted, and to my mind there never was a clearer proposition, under such circumstances, than that this evidence amounted in law to a contract, on the part of the defendants, to carry the goods to Shreveport.
As an elementary principle, when the terms of a contract are doubtful, the parties have a right to look into the facts and circumstances connected with the entire transactions transpiring immediately before the execution of the instrument, so as *63 to inform the mind of the court what was in truth intended by the parties. (2 Ellis and Blackburn, 517.)
It is contended on the part of the defendants’ counsel, and I believe the referee so found as a fact, that owing to the unsafe manner of transportation from New Orleans to Shreveport, they (the defendants) were justified in storing the goods in New Orleans; in other words, that they had a right, under such circumstances, to put an end to the contract the moment the goods arrived at New Orleans. I can find no good reason to justify the company in pursuing such a course.
The defendants’ witness, Mr. McKeever, testifies that the reason why the box was not forwarded by the Shreveport boat was, that they did not consider the boats responsible, and they were fearful the money for the maps would not be paid, therefore no effort, he says, was made to send the goods to Shreveport. But is it not fair to expect that, knowing all about the means of conveyance from New Orleans to Shreveport, and about the want of responsibility of the river boats, if they intended to limit their liability to New Orleans, they should have said so ? Was it not to be expected that they should have at least disclosed their doubts about the boats at the time they received the goods, and was it right that they should,'without fully informing the plaintiff of all these facts, charge freight to Shreveport ? On the contrary, were they not bound to inform the plaintiff of the danger contingent on the trip from New Orleans to Shreveport, the uncertainty of the boats, and the fact that unless the goods were called for at New Orleans they would store them there ?
The witness, McKeever, testified that the usual course for the company to pursue was, to send the goods by boats from New Orleans to Shreveport, directed to White, Smith & Baldwin, of the latter place, their agents. This being so, by virtue of their own testimony, the case is at once carried beyond the current of the rule laid down by the chancellor in the case of /St. John v. Van Banff or d. The case under consideration is different from that.
There the defendants informed the community how far they *64 carried, and the extent and limit of their route; that their custom was to place the goods, at the end of their route, in a position to reach their destination hy the ordinary means of conveyance, thereby limiting their liability. Here the defendants, by their own testimony, show that their custom was to carry to Shreveport,, and in fact so told the plaintiff and his agent, and so held themselves out to the world.
After a careful examination of this case, I am of opinion that the defendants did agree to carry the goods to Shreveport, and that the referee, in his refusal so to find as a matter of fact, and to find, as a conclusion of law, that there was a contract, committed an error, and the judgment should be reversed.
A question has arisen, as to whether the defendants were sufficiently informed of the value of the goods, so as to enable the plaintiff to have a recovery beyond the extent of $50, as limited in their receipt. I am clearly of opinion that they had ample notice of the goods being of the value of $292, and that the referee should have found that fact, and that he committed an error in not doing so.
The judgment should be reversed, and a new trial ordered, . with costs to abide the event. The order of reference is discharged.'